Paul C. Pancake v. Commissioner.
Pancake v. Commissioner
Docket No. 24061.
United States Tax Court
1951 Tax Ct. Memo LEXIS 355; 10 T.C.M. (CCH) 46; T.C.M. (RIA) 51012; January 17, 1951
*355 The fair market value as of September 1, 1945 of the real and personal property purchased by petitioner from Pancake Realty Co., in which he was the principal stockholder, was not in excess of the sum of $54,508.08, which petitioner paid therefor. L. E. Woods, Jr., Esq., 1000 First Huntington Nat'l Bank Bldg., Huntington, W. Va., for the petitioner. John O. Durkan, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income tax for the calendar year 1945 in the amount of $9,896.08. The respondent has moved to file an amended answer requesting an increased deficiency in the amount of $40,588.77. The primary issue is the fair market value on September 1, 1945 of th real and personal property located at 915-917 Fifth Avenue, Huntington, West Virginia, purchased by petitioner from Pancake Realty Co. The case was submitted on a stipulation, oral testimony and exhibits. The facts as stipulated are found accordingly. Findings of Fact Petitioner is an individual residing at Huntington, West Virginia. His individual income tax return for the year 1945 was filed with the collector of *356 internal revenue for the district of West Virginia. Petitioner is the president and general manager of Pancake Realty Co., a West Virginia corporation, and owns 92 per cent of its capital stock. The corporation is engaged in the real estate, insurance and mortgage loan business in the City of Huntington, West Virginia. In 1940 Pancake Realty Co. purchased from the Connecticut General Life Insurance Co. the premises located at 915 Fifth Avenue in the City of Huntington, for the sum of $45,000. The premises consist of a lot fronting 45 feet on the south side of Fifth Avenue and extending back to a depth of 200 feet. The dimensions of the building are 45X90 feet. It is a three-story, brick, frame, and stucco structure. It has no basement. The first floor consists of one large room with several small utility rooms in the rear. The second and third floors are divided into 12 small efficiency apartments, individually heated with gas stoves. All the apartments are rented furnished. The first floor is occupied by Pancake Realty Co., and the rear portion of the lot is used as a parking lot for the employees of that company. The property in question is located in a block where there is *357 little commercial activity. The principal types of property in the vicinity, as of September 1, 1945, consisted of churches, public buildings such as the public library, post office, city hall, and buildings occupied by the Veterans Administration, a building occupied by the Huntington Publishing Co., another building occupied by a printing company, a garage, a parking lot and a hotel. The best commercial district of the City of Huntington is on Third Avenue, rated as a 100 per cent location, with the next best location on Fourth Avenue. Fifth Avenue, where the premises in question are located, is rated as a 25 to 30 per cent location. After Pancake Realty Co. acquired the property in 1940, certain alterations were made converting the first floor for that company's use. Removable partitions were constructed to divide the space into small semi-private offices. These partitions were about eight feet high, the bottom four feet being of solid wood and the top four feet of glass. Counters were constructed and other alterations were made. These changes would be useless except to an occupant engaged in a similar type of business. As of September 1, 1945 there was very little demand in *358 Huntington, West Virginia, for properties of the type in question. The rents for apartments were frozen under O.P.A. regulations. The demand for residential properties was beginning to improve because the war was just over and returning veterans were looking for homes. The income of Pancake Realty Co. from the 915 Fifth Avenue property, and the expenses incurred in connection therewith during the period such company owned the premises, are set forth in the following schedule: 1940 through
1945 through
Dec.
1941
1942
1943
1944
8-31
Gross Income
$4,110.39
$9,461.42
$9,827.20
$9,710.39
$10,076.61
$6,482.84
Building Depreciation
634.20
947.09
947.09
958.46
958.46
638.96
Furniture Depreciation
230.75
622.17
602.38
901.52
780.10
400.18
Property Taxes
531.09
827.26
824.16
820.56
812.82
403.22 *
541.88 *
Gross Sales Taxes
41.45
135.83
139.81
131.61
134.11
87.20
Insurance
545.46
37.61
25.08
604.02
89.32
767.00 *
472.00 *
Management
346.09
613.77
736.33
463.44
476.71
354.60
Repairs and Supplies
2,005.54
1,941.91
2,399.16
1,922.62
2,996.09
1,106.73 *
1,512.04 **
Janitor Estimated
175.00
300.00
300.00
300.00
300.00
200.00
Net
399.19
4,035.78
3,853.19
3,608.16
3,529.00
2,524.95 *
Loss
2,275.98 *
*359 The figures shown on the foregoing schedule with respect to property taxes, insurance, repairs and supplies for the part of 1945 through August are adjusted figures representing the part of such expenses pro rated to September 1. The amounts shown as janitor's expenses are all estimated, since the janitor took care of several buildings managed by the realty company in addition to the property in question and was paid $60 per week for all his work without an attempt to allocate any portion to any particular building. The amount of gross income shown on such schedule includes the gross rentals from all the furnished apartments maintained at 915 Fifth Avenue and the sum of $200 per month which Pancake Realty Co. set up on its books as the fair rental value of the first floor which it occupied. The $200 per month rental for the first floor set up by the company was the equivalent of the prevailing rental for similar space in the vicinity on September 1, 1945. The Arvis Restaurant located immediately west of the Pancake building, with an area of 3,300 square feet, was renting at the time of its purchase by the tenant *360 in 1944 for $125 per month, or 44 cents per square foot per year. The premises occupied by White Haines Optical Co., two doors west of the Pancake building, having a rental area of 4,038 square feet, was renting on September 1, 1945 for $150 per month, or 45.4 cents per square foot per year. The Sherwin-Williams storeroom located at 1043 Fourth Avenue, a better commercial district, with a rental area of 4,800 square feet, was renting in September 1945 for $215 per month, or 53.7 cents per square foot per year. The floor space occupied by Pancake Realty Co. had a rental area of 4,050 square feet, at a rental of $200 per month, which is the equivalent of 59 cents per square foot per year. The Arvis Restaurant building, located next door to the Pancake building, is a one-story brick building 30X110 feet on a lot 30X200 feet. It was purchased late in 1944 by George Arvis for $25,000. The Fifth Avenue Arcade building, located about one block from the Pancake building, is constructed of reinforced concrete with brick facing and is on a lot 48 1/2X185 feet. The front 60 feet of the building is three stories and the remainder is two stories high. At the time of its sale the principal tenants *361 were doctors, lawyers, real estate and life insurance companies and several novelty shops. It was purchased on October 18, 1943 for $45,900. The Star Furniture Co. building, located on Fourth Avenue, one of the better commercial districts, is a four-story brick building 30X200 feet, with basement. At the time of its sale the building was under lease to Star Furniture Co. at an annual rental of $9,000, with the tenant required to pay taxes and maintain the building except for outside walls and roof. It sold on February 1, 1945 for $110,000. The Charles Tweel building is located on Eighth Street, between Fifth and Sixth Avenues. It is situated on a lot fronting 100 feet on Eighth Street and running to a depth of 60 feet. On the first floor were four storerooms, with four apartments on the second floor. This property was purchased in March 1945 for $26,650. The Emmons Apartments, located on the corner of Third Avenue and Twelfth Street, comprise two buildings of brick construction, and six stories each. There are approximately 90 apartments and 3 elevators in the buildings, and the gross rental in 1945 was about $29,000. A contracting company in 1945 made an appraisal based on reconstruction *362 cost and arrived at a figure of $306,000 as the depreciated value. These buildings were purchased by Huntington Land Co. on July 1, 1945 for $100,000. The Pancake property here in question was assessed for property tax purposes by the assessor of Cabell County at $48,600 in 1940 and $44,100 in 1945. On September 1, 1945 Pancake Realty Co. sold to petitioner, its principal stockholder, the premises located at 915 Fifth Avenue in Huntington, West Virginia, for the sum of $54,508.08. The sale included the real estate and the apartment furnishings and fixtures, but did not include the partitions, counters, etc., used by Pancake Realty Co. in the operation of its business. Immediately after petitioner acquired title to the aforesaid premises he conveyed the same to a trust for the benefit of his seven children. Commencing with the month of October 1945, Pancake Realty Co. paid to the trust a monthly rental of $400 for the use of the first floor of the building in question. In determining his deficiency the respondent determined that the fair market value of the land, building and furnishings conveyed was $70,000. He therefore included in petitioner's gross income the difference *363 between the sale price of $54,508.08 and the $70,000, or $15,491.92, as a dividend distribution by Pancake Realty Co. to petitioner. The fair market value of the real and personal property located at 915 Fifth Avenue in the City of Huntington, West Virginia, on September 1, 1945, was not in excess of the sale price of $54,508.08. Opinion The only issue is the fair market value as of September 1, 1945 of certain real and personal property sold to petitioner by Pancake Realty Co., of which he was the principal stockholder. The parties have stipulated that on the critical date Pancake Realty Co. had earned surplus and current earnings sufficient to make a dividend distribution of $15,491.92. Petitioner concedes that where a stockholder acquires property from a corporation in which he is a stockholder, at a price less than its fair market value, a taxable dividend would result. He contends, however, that the fair market value of the property at the time of the transfer was not in excess of the agreed consideration paid therefor. In support of his burden of showing the fair market value of the property on the critical date, petitioner has offered evidence of sales in 1944 and 1945 *364 of property of comparable character in the immediate vicinity and in close proximity to the property involved; of rental values of similar space; of market conditions for commercial and combinations of commercial and residential property; the changes in market conditions; and the opinion evidence of five real estate experts engaged in the real estate business in the City of Huntington, all of whom were familiar with the premises in question and other properties in the commercial districts of that city at the critical date. All of these real estate experts placed a valuation upon the property in question of less than the actual purchase price paid by the petitioner. The testimony of Carl R. Varnum was particularly impressive. He had been actively engaged for over 25 years in the management, leasing and selling of real estate and in making appraisals for banks, estates, corporations and individuals, covering all types of properties. He is a member of the American Institute of Real Estate Appraisers, National Institute of Real Estate Boards, Real Estate Board of Huntington, West Virginia, Institute of Real Estate Brokers, G. I. Appraiser, Cabell, Wayne and Mason Counties, West Virginia, *365 and has qualified as an expert in the Counties of Cabell and Putnam, West Virginia, for the purpose of condemnations. He is a past president of the Huntington Board of Realtors and present member of the Board of Governors of West Virginia Real Estate Associations. Varnum testified that the fair market value of the property on September 1, 1945 was $52,500. In arriving at his valuation he gave consideration to desirability of the location for commercial or retail business, the condition of the real estate market at the critical date, the physical attributes of the building, the selling price of a number of comparable properties within the period of two years prior to September 1, 1945, and the fact that inflationary pressures did not begin to affect commercial properties in the City of Huntington until 1946 and 1947. He also relied heavily on the income approach. He took the figure of $9,515 as the total yearly income for 1945, and the charges he could stabilize on this amount for management, operating expenses and fixed expenses, or a total of $6,132.90, leaving a net figure to be capitalized of $3,381.10 as net income before building depreciation. He used five per cent in capitalizing *366 the land, giving a land valuation of $22,500, leaving a residual of net income of $2,256.10 which he capitalized at 7 per cent, giving a figure of $52,578.32, or a round figure of $52,500. H. A. Resener, another real estate expert, arrived at a similar figure of $52,500. Resener has specialized in making leases in the commercial district of the City of Huntington. He testified he had made 90 per cent of the commercial leases in the downtown area. He also manages and sells real estate. He was the appraiser for Aetna Life Insurance Co. and Connecticut General Life Insurance Co., and makes some appraisals for the First Huntington National Bank. Resener arrived at his valuation by assigning to the land a value of $500 a front foot, resulting in a land value of $22,500. He took the original cost of the building, which was $50,000 in 1925, and deducted two per cent depreciation, giving the building a depreciated value of $30,000, or a total valuation of the land and building of $52,500. The other three real estate experts, who had experience in the real estate business in the City of Huntington over periods of 33 to 50 years, testified to valuations ranging from $45,000 to $50,000. *367 Respondent introduced only some testimony on the assessed valuation of the real estate in question and one or two other properties, showing the amounts for which they were assessed for local property tax purposes. It appears that the real estate in question was assessed in 1940 at $48,600 and in 1945 at $44,100. This record, however, contains no evidence as to the ratio of assessed value to the true value of the property. We think, therefore, under such circumstances, the assessed value is not very helpful. Cf. . The respondent also argues that after the sale was effected, and in October 1945, Pancake Realty Co. agreed to pay the trust to which the property was transferred a rental of $400 per month for the space that company occupied, and that such amount should be considered in determining the fair market value on the basis of capitalization of earnings. Since these facts and circumstances arose subsequent to the critical date, they are also of little value here, because it is obvious that unforeseeable circumstances could scarcely have entered into any purchaser's estimate of value. Cf. . *368 Furthermore, the respondent offered no evidence of the fair rental value in September 1945 of the space occupied by Pancake Realty Co. The evidence preponderantly substantiates the fact that the fair rental value of such space as of September 1, 1945 was not in excess of $200 per month. After giving careful consideration to all the circumstances presented by this record, including the character of the building in question, its location, the conditions of the real estate market in the City of Huntington in September 1945, sales of comparable property in close proximity and within a reasonable period prior to the sale in question, the rental value, the opinion evidence of the experts, and all relevant factors, we have found as a fact that the fair market value as of September 1, 1945 of the real and personal property which petitioner acquired by purchase from Pancake Realty Co. was not in excess of the sum of $54,508.08, which is the consideration paid therefor. The contention of the petitioner is sustained. Decision will be entered for the petitioner. Footnotes
*. Actual. ↩
*. Prorated. ↩
**. Averaged over 5-year period.↩